

200 SUMMIT LAKE DRIVE, VALHALLA, NY 10595
TEL: 914.449.1000   FAX: 914.449.1100   WWW.KBRLAW.COM

PATRICK STOLTZ
DIRECT: 914.449.1076
PSTOLTZ@KBRLAW.COM

February 25, 2022

**VIA ECF**

The Honorable Michael A. Shipp
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

Re:    *Certain Underwriters, et al. v. Good Night Nursing, et. al.*
         Case No.:        3:21-cv-07666-MAS-LHG_____   _

Dear Judge Shipp:

This firm represents Plaintiffs Certain Underwriters at Lloyd's, London, *et al.* ("Underwriters") in this matter (the "Action"). We respectfully submit this letter brief in response to Your Honor's February 4th Order (Doc. No. 9) (the "February 4th Order") to: (1) provide an update on the status of the underlying state court action filed in the Superior Court of New Jersey, Ocean County, styled, *The Estate of ANC et al. v. Good Night Nursing Agency et al.*, No. OCN-L-000376-20 (the "Underlying Action") and (2) show cause why the Court should not stay or dismiss the Action pending resolution of the Underlying Action.

I.    **Status of the Underlying Action.**

The complaint in the Underlying Action was filed on February 5, 2020 (the "Underlying Complaint").[1]  On October 16, 2020, the Underlying Complaint was administratively dismissed without prejudice after Plaintiffs in the Underlying Action ("Underlying Plaintiffs") were apparently unable to serve it upon Good Night Nursing Agency, LLC ("GNNA").

On or about November 2, 2020, Underlying Plaintiffs filed a motion to reinstate the Underlying Complaint and permit substituted service on GNNA's insurer, which was incorrectly identified as TransEleven Claims Management, Inc. ("TransEleven") (the "Motion to Reinstate and for Substituted Service"). That Motion was the first time that Underwriters were made aware that a lawsuit had been filed by Underlying Plaintiffs against GNNA or Almarie Macintosh (collectively,

---

[1] Underwriters respectfully refers the Court to its Complaint for Rescission, Declaratory Judgment, and Other Relief, dated March 31, 2021 (Doc. No. 1) (the "DJ Complaint") at ¶¶ 12-14, 20 and Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment Against Defendant Good Night Nursing Agency, LLC (Doc. No. 8-2) at 1-2 for a recitation of the claims alleged in the Underlying Action.

"Underlying Defendants"). (*See* DJ Complaint at ¶ 48)  Also, to date, neither GNNA nor Ms. Macintosh have tendered the Underlying Complaint to Underwriters, directly or via TransEleven, and Underwriters have not received a request from GNNA or Ms. Macintosh to defend or indemnify them in the Underlying Action. (*See id.*) Underlying Plaintiffs later withdrew the Motion for Substituted Service upon learning that TransEleven was only a claims administrator and not GNNA's insurer.

Subsequently, on or about January 7, 2021, Underlying Plaintiffs filed a second motion to reinstate the Underlying Complaint and permit substituted service on Underwriters and XS Group Incorporated, a wholesale broker (the "Second Motion to Reinstate and for Substituted Service"). On January 28, 2021, Underwriters filed an Opposition to the Second Motion to Reinstate and for Substituted Service, and on February 15, 2021, Underlying Plaintiffs withdrew that Motion. Then, on February 18, 2021, Underlying Plaintiffs made a fourth attempt to serve GNNA through a registered agent by certified mail. Service upon GNNA was apparently effectuated on February 24, 2021, but GNNA did not answer the Underlying Complaint or otherwise move in response to it.[2]

Underlying Plaintiffs then filed a third motion to reinstate the Underlying Complaint and to enter default against GNNA (the "Third Motion to Reinstate and to Enter Default"). The Court granted that Motion on September 10, 2021, and entered Default against GNNA on September 16, 2021.

On January 15, 2022, the Court issued a Lack of Prosecution Dismissal Warning Notice to Underlying Plaintiffs, advising that the Underlying Action would be dismissed without prejudice on March 15, 2022, unless action was taken. In response, on February 18, 2022, Underlying Plaintiffs filed an Amended Complaint (the "Amended Complaint") that includes the following additional defendants: Good Night Child Care; Goodnite Care Inc.; Goodnight Care Inc.; Menachem Hauer; Malky Hauer; Michal Brull; and Hillel Brull. The Amended Complaint also includes two additional counts for alleged professional malpractice and consumer fraud/misrepresentation.

In this brief, we consider the recently filed Amended Complaint as part of the Underlying Action.

## II.   The Court Should Not Stay or Dismiss this Action.

Under the Declaratory Judgment Act, federal courts have discretion to exercise jurisdiction over declaratory judgment actions. *See* 28 U.S.C. § 2201; *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494–95 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). A district court's decision to exercise jurisdiction over a declaratory judgment action involves the careful balancing of various factors refined through case law interpreting *Brillhart, Wilton*, and their progeny.

Most recently, the Third Circuit Court of Appeals in *Reifer v. Westport Insurance Corp.*, clarified these factors, which "should guide [this Court in] its exercise of sound and reasoned discretion." 751 F.3d 129, 145 (3d Cir. 2014). The *Reifer* Court explained that a district court analyzing jurisdiction over a declaratory judgment action should give "meaningful consideration" to the following "non-exhaustive" list of factors:

(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
(2) the convenience of the parties;

---

[2] We are unaware of any further attempt to serve the Underlying Complaint upon Ms. Macintosh.

(3)  the public interest in settlement of the uncertainty of obligation;

(4)  the availability and relative convenience of other remedies;

(5)  a general policy of restraint when the same issues are pending in state court;

(6)  avoidance of duplicative litigation;

(7)  prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and

(8)  (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court proceeding and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*See id.*

## A.  There Is No Pending Parallel State Court Proceeding that Weighs in Favor of Staying or Dismissing this Action.

In considering whether to exercise jurisdiction over a declaratory action, "[c]ourts should first determine whether there is a 'parallel state proceeding.'" *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 282 (3d Cir. 2017) (quoting *Reifer*, 751 F.3d at 143, 146). While the existence of a parallel state proceeding is "but one factor for courts to consider," it is "a significant factor that is treated with 'increased emphasis.'" *Id.* (quoting *Reifer*, 751 F.3d at 144). Cases are "parallel" only when there is "a substantial similarity in issues and parties[.]" *Kelly*, 868 F.3d at 284. "[T]he mere potential or possibility that two proceedings will resolve related claims between the same parties" is not enough. *Id.* at 283–84; *Cont'l Indem. Co. v. H&M Int'l Transportation, Inc.*, Civ. A. No. 18-14701, 2019 WL 1379884, at *2 (D.N.J. Mar. 26, 2019).

Here, the Underlying Action should not be considered a "parallel state proceeding."

*First*, the parties in the Underlying Action and in this Action are not the same. Indeed, Underwriters are not parties to the Underlying Action, and Underlying Plaintiffs are not parties to this Action.

*Second*, the issues in the Underlying Action are distinct from those in this Action. The Underlying Action asserts claims for negligence, vicarious liability, emotional distress, professional malpractice, and consumer fraud/misrepresentation arising out of injuries allegedly sustained by an infant child while in the care of Ms. Macintosh. By contrast, this Action seeks a judicial declaration that either (1) the Policy is rescinded and void *ab initio* as a result of GNNA's material misrepresentations in its application for insurance coverage with Underwriters, or (2) there is no coverage (defense or indemnity) for GNNA and Ms. Macintosh under certain terms, conditions and exclusions of the Policy. (*See* DJ Complaint at ¶¶ 3-4)  As such, the focus of the claims in the Underlying Action and this Action are inherently different.

*Third*, the Underlying Action and this Action seek distinct and separate relief. Underlying Plaintiffs seek damages (including punitive damages), together with interest and attorney's fees and costs. Underwriters seek entry of declaratory judgment against GNNA and Ms. Macintosh. Accordingly, the resolution of the Underlying Action will not resolve issues concerning GNNA's material misrepresentations in its application for coverage with Underwriters or Underwriters' obligation to defend and indemnify GNNA and Ms. Mcintosh. *See Evanston Ins. Co. v. Neuromonitoring Techs., Inc.*, Civ. A. No. 18-11497, 2019 WL 1916203, at *3 (D.N.J. Apr. 30, 2019).

In short, the facts here are similar to those in the *Kelly* case cited above. In *Kelly*, 868 F.3d at 287, the Third Circuit held that "issues involved in separate state and federal lawsuits – the extent of

the [insured party's] liability to the injured persons and the extent of coverage owed by the insurer to the [insured party], respectively – were distinct," and not parallel. *See id.* ("The issue of coverage is not necessary to the resolution of the state action."). Likewise, the two proceedings here should not be considered parallel. With a finding of *no* parallel proceeding, exercising jurisdiction is considered appropriate unless opposing factors weigh against it, which is not the case here. *See Evanston*, 2019 WL 1916203, at *3; *Cont'l Indem. Co.*, 2019 WL 1379884, at *3

### B.  The *Reifer* Factors Weigh in Favor of Exercising Jurisdiction over this Matter.

Again, the *Reifer* Court laid out additional factors for district courts in the Third Circuit to consider when evaluating whether to exercise jurisdiction over a case under the Declaratory Judgment Act, even where no parallel proceedings exist. *See Evanston*, 2019 WL 1916203, at *3.

The first *Reifer* factor contemplates the likelihood that a federal court declaration will resolve the uncertainty giving rise to the controversy. *See Reifer*, 751 F.3d at 146. A decision in this Action will resolve the uncertainty regarding whether the Policy should be rescinded and deemed void *ab initio* as a result of GNNA's material misrepresentations in its application for insurance coverage. Therefore, the first *Reifer* factor weighs in favor of exercising jurisdiction and not staying or dismissing this Action. *See Kelly*, 868 F.3d at 288 (holding that "a declaratory judgment by the District Court would resolve the uncertainty that prompted filing of the Declaratory Action").

The second *Reifer* factor considers the convenience of the parties. As an initial matter, Underlying Plaintiffs are not parties to this Action, and Underwriters are not parties to the Underlying Action. The only parties potentially affected by having this case heard in a federal forum are GNNA and Ms. Macintosh, who have not attempted to litigate at all in either proceeding. Regardless, there is no reason why litigating in the District of New Jersey (Trenton) would be any less convenient than litigating in state court in New Jersey (Ocean County). Those two courts are close to one another and, therefore, the second *Reifer* factor weighs in favor of exercising jurisdiction.

The third *Reifer* factor considers the public interest in the settlement of the uncertainty of obligation. The Policy does not appear to turn on any unsettled question of state law or important public policy issue. Absent such concerns, there is little reason for a federal court to hesitate in deciding this case. *See Reifer*, 751 F.3d at 147 ("federal and state courts are equally capable of applying settled state law to a difficult set of facts.") (quoting *Heritage Farms Inc. v. Solebury Twp.*, 671 F.2d 743, 747 (3d Cir. 1982). Thus, this factor weighs in favor of exercising jurisdiction.

Turning to the fourth *Reifer* factor, there is no more convenient remedy available. Again, Underwriters are not parties to the Underlying Action, and there is no reason for them to file the same declaratory judgment action in New Jersey state court as a new action. *See Evanston*, 2019 WL 1916203, at *4. "Because this [A]ction already exists, it is arguably more convenient for the parties to litigate their insurance coverage dispute in this federal forum, rather than start anew in state court." *See Nationwide Prop. & Cas. Ins. Co. v. Zatyko*, CV 16-1010, 2016 WL 6804436, at *4 (E.D. Pa. Nov. 16, 2016) (determining that the fourth *Reifer* factor either weighed in favor of exercising jurisdiction or was neutral because even though the parties could seek declaratory relief in state court, they would be required to commence a new action in state court). Accordingly, this factor weighs in favor of exercising jurisdiction or, at the very least, is neutral.

The fifth and sixth *Reifer* factors consider the federal courts' general policy of restraint when the same issues are pending in a state court and the avoidance of duplicative litigation, respectively. *Reifer*, 751 F.3d at 146. Again, Underwriters are not named in the Underlying Action, and the

question of whether the Policy should be rescinded and declared void *ab initio* as a result of GNNA's material misrepresentations on its application for coverage are separate and distinct from whether Underlying Defendants are liable for injuries sustained by an infant child while allegedly in the care of Ms. Macintosh. The two proceedings are distinct in terms of the parties named and the nature of the claims; thus, there is no concern about the possibility duplicative litigation. These *Reifer* factors, therefore, weigh in favor of exercising jurisdiction.

The seventh *Reifer* factor considers preventing the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*. This factor is inapplicable, as there is no issue here of "procedural fencing" or a "race for *res judicata*." To be sure, GNNA and Ms. Macintosh have taken no steps to respond to the Underlying Complaint, and the Underlying Action has been at a virtual standstill since it was commenced in February 2020. Therefore, this factor is inapplicable or, at the very least, is neutral.

The eighth and final *Reifer* factor—which is applicable in the insurance context—identifies an "inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion." *Id.* Although Underwriters issued a Policy to GNNA, they are not parties in the Underlying Action. Additionally, the facts at issue in the Underlying Action are not at issue in this Action. As such, there is no danger that Underwriters will establish facts in this Action that could prejudice Underlying Defendants. *See Evanston*, 2019 WL 1916203, at *4. Moreover, any inherent conflict would be the same if the insurance coverage dispute was litigated in state court rather than federal court. Therefore, this factor weighs in favor of exercising discretionary jurisdiction or, at the very least, is neutral. *See Homesite Ins. Co. v. Neary*, Civ. A. No. 17-2297, 2017 WL 5172294, at *3–4 (E.D. Pa. Nov. 8, 2017) (finding the eighth *Reifer* factor neutral for this reason).

## III.   **CONCLUSION.**

For the reasons stated above, no parallel proceeding exists, and the balancing of the *Reifer* factors weighs in favor of this Court exercising jurisdiction as permitted under the Declaratory Judgment Act. *See Evanston*, 2019 WL 1916203, at *5. Underwriters respectfully request that this Court not stay or dismiss the Action pending resolution of the state court proceeding.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

KAUFMAN BORGEEST & RYAN LLP

Patrick Stoltz