**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON *et al.*,

Plaintiffs,

v.

GOOD NIGHT NURSING AGENCY, LLC *et al.*,

Defendants.

Civil Action No. 21-07666 (MAS) (LHG)

**MEMORANDUM OPINION**

---

**SHIPP, District Judge**

This matter comes before the Court on Plaintiffs Certain Underwriters at Lloyd's, London; Lloyd's Syndicate CGM 2488; Lloyd's Syndicate CSL 1084; Lloyd's Syndicate ARK 4020; Lloyd's Syndicate AES 1225; Lloyd's Syndicate SAM 727; and Lloyd's Syndicate AML 2001's (collectively, "Underwriters") unopposed Motion for Default Judgment against Defendant Good Night Nursing Agency, LLC ("Nursing Agency"). (ECF No. 8.) The Court has carefully considered Underwriters' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Underwriters' Motion.

I.   **BACKGROUND**[1]

This matter originates with the death of an infant in February 2018 under the supervision of Almarie Macintosh ("Macintosh"), a resident of Kings County, New York. (Compl. ¶¶ 13-14,

---

[1] "The facts of this matter derive from the Complaint as well as the affidavits and exhibits submitted in conjunction with [Underwriters'] motion for default judgment." *Certain Underwriters at Lloyds, London Subscribing to Pol'y No. ABLD007388 v. Premier Guidance LLC*, No. 17-5676, 2018 WL 278738, at *1 (D.N.J. Jan. 2, 2018) (internal citation omitted).

20, ECF No. 1.) The facts are both straightforward and tragic. Nursing Agency, a New Jersey-based nursing care facility, referred Macintosh to the infant's parents to provide nursing services for a week-long period. (*Id.*) The infant died while allegedly in the care of Macintosh on February 23, 2018. (*Id.* ¶ 20.) That same day, Macintosh told Nursing Agency of the infant's death and the police carried out an investigation. (*Id.* ¶ 43.) It appears that although Nursing Agency referred Macintosh to the infant's family, it did not directly employ her. (*Id.* ¶ 14.)

Approximately three months later, Nursing Agency's Chief Executive Officer applied to Underwriters for an insurance policy covering professional and general liability (the "Policy"). (*Id.* ¶ 32.) Nursing Agency sought retroactive coverage dating back several years. (*Id.* ¶ 2.) The applications inquired multiple times whether Nursing Agency was aware of any act or omission that may lead to potential claims under the policy. (*Id.* ¶¶ 33-39.) Each time, the Chief Executive Officer denied knowledge of any potential liability in a signed declaration on behalf of Nursing Agency. (*Id.*) Relevant here, Nursing Agency never disclosed the death of the infant from a few months earlier. (*See id.*)

Underwriters issued Nursing Agency the Policy effective May 2018 through May 2019, with retroactive coverage going back to January 2013. (*Id.* ¶ 2.) Underwriters did not take the infant's death into account when assessing whether to issue the Policy to Nursing Agency and at what premium. (*Id.* ¶¶ 62-63.) In July 2018, five months after the infant died and two months after Nursing Agency submitted its insurance coverage application to Underwriters, Nursing Agency first informed TransEleven Claims Management ("TransEleven"), a third-party claim administrator for Underwriters, of the infant's death. (*Id.* ¶ 40.) TransEleven initiated an investigation into the claim and concluded that the timing of Nursing Agency's Policy application suggested intentional misrepresentation by concealing the infant's death. (*Id.* ¶¶ 41, 43-44.)

Underwriters thus informed Nursing Agency that it was reserving its rights to rescind or deny the Policy pending further investigation. (*Id.* ¶ 44.)

Two lawsuits resulted from the above-described events. The first, a February 2020 state court action where the infant's family sued Nursing Agency and Macintosh for several claims, including negligence and malpractice. (*Id.* ¶¶ 20, 45.) For reasons unknown, this suit underwent a series of administrative dismissals for lack of prosecution before being reinstated. (*Id.* ¶¶ 45-49; Underwriters' Correspondence on Order to Show Cause 1-2 ("Underwriters' Correspondence"), ECF No. 10.) Although Underwriters knew that the infant died a few months after issuing the Policy, November 2020 was the first time they learned that any lawsuit was filed. (Compl. ¶ 47; Underwriters' Correspondence 1-2.) Nursing Agency never responded to Underwriters' proposal to defend the action under a reservation of rights that included the right to seek declaratory judgment for rescission of the Policy. (*Id.* ¶ 50; Underwriters' Correspondence 2.) Underwriters initiated a separate federal action before this Court in March 2021. (ECF No. 1.) Specifically, Underwriters filed suit against Nursing Agency requesting that the Court rescind the Policy or, alternatively, declare that Underwriters are not obligated to provide coverage.[2] (Compl. ¶¶ 54-91.) Underwriters served Malky Hauer, a managing agent of Nursing Agency, in April 2021 but Nursing Agency failed to respond or otherwise appear in this action since. (*See* ECF No. 4.) Underwriters, accordingly, moved for a Clerk's default in June 2021 (ECF No. 7) and now moves the Court to enter default judgment (ECF No. 8). Nursing Agency again failed to respond to Underwriters' Motion.

---

[2] Underwriters' Complaint named as nominal defendants the infant's family because they are "potential future judgment creditors" and "may claim to have an interest in this matter's resolution." (Compl. ¶ 19.)

Meanwhile, the state court action continued during the pendency of this federal action. (Underwriters' Correspondence 2.) The infant's family eventually withdrew its attempt to submit direct claims against Underwriters in February 2021. (*Id.*) As a result, Underwriters are not parties to the state court action. Nursing Agency likewise defaulted in the state court action, too. (*Id.*)

## II.   **LEGAL STANDARD**

If a party fails to plead or otherwise defend claims against it, on the Clerk of the Court entering a default, the Court may enter default judgment under Federal Rule of Civil Procedure 55(b).[3] Fed. R. Civ. P. 55(b). "[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688, at 58-59 (3d ed. 1998 and Supp. 2013)). Whether to grant default judgment is left "primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).

Before entering default judgment, the Court must determine whether it has subject matter jurisdiction over the claims asserted and personal jurisdiction over the parties. *Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, No. 16-3572, 2017 WL 3668946, at *4 (3d Cir. Aug. 25, 2017) (citing *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010)). The Court must also ensure that the defendant was properly served. *Lumico Life Ins. Co. v. Marks*, No. 19-18968, 2021 WL 1783283, at *3 (D.N.J. May 5, 2021). Further, the Court must determine "whether the moving party's complaint establishes a legitimate cause of action." *La. Counseling and Family Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 365

---

[3] Hereafter "Rule" or "Rules" refers to the Federal Rules of Civil Procedure.

(D.N.J. 2008). If these initial requirements are met, then the Court examines three factors to determine whether entry of a default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

## III.   DISCUSSION

The Declaratory Judgment Act (the "Act") provides that a district court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. Courts have broad discretion in deciding whether to grant relief. *Scottsdale Indem. Co. v. Collazos*, No. 16-8239, 2017 WL 4711451, at *1 (D.N.J. Oct. 20, 2017). Before addressing the propriety of granting Underwriters' default judgment motion, the Court must first determine whether it has jurisdiction over the suit and parties. Once the Court is satisfied that it can hear the matter, it then must decide whether it is appropriate to do so.

### A.  Does the Court Have Jurisdiction?

A precursor to the Court's ability to enter default judgment against a party turns on a determination that "(1) it has personal and subject-matter jurisdiction; (2) the defendants were properly served; (3) the complaint sufficiently pleads a cause of action; and (4) the plaintiff has proven damages." *Lumico Life Ins. Co.*, 2021 WL 1783283, at *2 (citing *Days Inns Worldwide, Inc. v. Jinisha Inc.*, No. 14-6794, 2015 WL 4508413, at *1 (D.N.J. July 24, 2015)). For the reasons below, the Court finds jurisdiction.

#### i.    *Subject Matter and Personal Jurisdiction*

It is the Court's affirmative duty to examine its jurisdiction both over the subject matter and the parties themselves before entering a default judgment. *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015). Underwriters invoke the Court's

5

diversity jurisdiction under 28 U.S.C. § 1332, claiming complete diversity and an amount in controversy that exceeds $75,000. (Compl. ¶ 15.) Because declaratory judgment actions do not involve monetary damages, the Court measures "the value of the object of the litigation." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 398 (3d Cir. 2016) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977); 14AA Charles Alan Wright et al., *Federal Practice & Procedure* § 3708 (4th ed. 2016)). For insurance contract actions, district courts look to the value of the insurance policy and the damages alleged in the underlying action to determine whether it exceeds $75,000. *Colony Ins. Co. v. Troensa Constr., Inc.*, No. 17-03577, 2018 WL 4676038, at *6 (D.N.J. Sept. 28, 2018). Here, Underwriters seek to rescind the Policy that provides up to $1,000,000 of professional and general liability coverage per claim. (Compl. Ex. 2, ECF No. 1-3.) In addition, Nursing Agency applied for the Policy three months after the infant's death, creating the potential for a future claim. The Court thus finds the amount in controversy requirement satisfied. Regarding diversity of citizenship, Nursing Agency is a limited liability company with all principal members residing in New Jersey and Underwriters are each incorporated and headquartered in London, England. (Compl. ¶ 12 (citing 28 U.S.C. § 1332)); *see also Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (for purposes of diversity jurisdiction, the citizenship of an LLC "is determined by the citizenship of its members"). Finally, as to personal jurisdiction, because Nursing Agency has its principal place of business in New Jersey, and its members reside in New Jersey as well, there can be little dispute that the Court can exercise jurisdiction over it. *Griggs v. Swift Transp. Co.*, No. 17-13480, 2018 WL 3966304, at *4 (D.N.J. Aug. 17, 2018) ("For a corporation or limited liability company, the 'paradigm' for general jurisdiction is its place of incorporation or registration and its principal place of

business."). Accordingly, the Court finds that it has subject matter and personal jurisdiction over the suit and Nursing Agency, respectively.

     *ii.*      ***Service***

     Next, the Court considers whether Underwriters properly served Nursing Agency prior to moving for a default. *Gold Kist, Inc. v. Laurinburg Oil Co. Inc.*, 756 F.2d 14, 19 (3d Cir. 1985) (default judgment improper where complaint is not served on defaulting party). This is a requisite step before the Court can enter default judgment. *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011). Underwriters retained a process server to serve the Complaint and Summons on Nursing Agency. (Decl. of J. Donnelly, ECF No. 4.) The process server declared that on April 22, 2021, he personally served Malka Haver, purportedly Nursing Agency's managing agent, at 217 River Ave, Lakewood, New Jersey.[4] (*Id.*) Rule 4(h)(1)(B) provides that a limited liability company may be served by delivering a copy of the "summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or law to receive service" or by following state law for service "in the state where the district court is located or where service is made," as allowed by Rule 4(e)(1). *See* Fed. R. Civ. P. 4(h)(1), 4(e)(1). Because under both New Jersey law and Rule 4(h)(1) managing agents of limited liability companies can accept service, the Court finds service proper here. *See id.*; N.J. Ct. R. 4:4-4(a)(5).

---

[4] Underwriters' Complaint pleads that Malky Hauer and her spouse Menachem Hauer are owners and operators of Nursing Agency. (Compl. ¶ 12.) The service processor attests that he served a "Malka Haver" at an address associated with Nursing Agency. (Decl. of J. Donnelly.) The Court finds that although the Declaration of Service or the Complaint may contain a scrivener error in spelling the managing agent's name, Nursing Agency was properly served in April 2021.

### iii.    *Sufficiency of Underwriters' Pleadings*

Next, the Court addresses the merits of the action. In doing so, it must accept all well-pleaded factual allegations in the Complaint as true and determine whether Underwriters state a cognizable cause of action. *Lumico Life Ins.*, 2021 WL 1783283, at *3. Underwriters filed suit under the Declaratory Judgment Act to rescind or void their insurance contract with Nursing Agency on multiple theories, including equitable fraud and material misrepresentations in the application. (Pls.' Moving Br., 7, ECF No. 8-2.) To establish equitable fraud, a party must show: "(1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party." *See In re Tri-State Armored Servs. Inc.*, 332 B.R. 690, 708 (Bankr. D.N.J. Oct. 3, 2005) (citations omitted.) For an equitable fraud claim, New Jersey law requires that for "subjective information" on an insurance application, such as questions regarding whether a potential insured is "aware of any circumstances which may result in a claim being made," an additional inquiry is required—"whether the insured knew that the information was false when completing the application." *First Am. Title Ins. Co. v. Lawson*, 827 A.2d 230, 237 (N.J. 2003) (citing *First American Title Ins. Co. v. Lawson*, 798 A.2d 661, 668 (N.J. Sup. Ct. App. Div. 2002); *Ledley v. William Penn Life Ins. Co.*, 651 A.2d 92, 96 (N.J. 1995)).

Underwriters' Complaint provides sufficient evidence to support their claim that Nursing Agency knowingly made materially false statements on its Policy application. (Compl. ¶¶ 32-33.) For example, Nursing Agency answered "[n]o" to the following questions:

> Are you aware of any act, error, omission, or other matter which is likely to lead to a claim against you or other loss of the type that could be covered by [the Professional Liability or General Liability] coverage part?

> Does any person proposed to be insured have knowledge or information of any act, error or omission which might reasonably be expected to give rise to a claim?

(*Id.* ¶¶ 32-35.) These answers were provided just a few months after the infant's death. Further, Nursing Agency's Chief Executive Officer affirmed that he completed a reasonable inquiry in answering the questions and that the answers were "accurate and complete" in providing information that is "material to [Underwriters'] risk undertaking." (*Id.* ¶¶ 36-38.) Nursing Agency also agreed in its application to provide any material updates before the inception of the Policy. (*Id.* ¶ 38.)

Nursing Agency's representations in its application (or lack thereof) influenced how Underwriters viewed the risk in issuing the Policy. (*Id.* ¶ 62.) Underwriters therefore adequately plead reliance. (*Id.*) Similarly, Underwriters meet their burden of demonstrating that the omissions were material to the Policy terms and Nursing Agency's assessed premiums. (*Id.* ¶ 63.) There are also ample facts set forth in the pleadings that Nursing Agency knew of the infant's death while completing the Policy application and, more importantly, the potential exposure it had to future claims. (*See, e.g., id.* ¶¶ 32-44.) For example, Nursing Agency's timing for applying for liability insurance and the significance of the incident create an inference that Nursing Agency was attempting to deceive Underwriters into issuing a policy after-the-fact. *See Booker v. Blackburn*, 942 F. Supp. 1005, 1010 (D.N.J. 1996) ("[E]ven without any manifestation of a third party's intent to pursue a claim against an insured, such as a . . . complaint, an insured may be charged with notice of circumstances which may result in a claim being made against it.") Even under a subjective inquiry that turns on Nursing Agency's state of mind and good faith, courts can "nonetheless [be] satisfied that no reasonable fact-finder could conclude that [its] answer truly

reflected [its] actual opinion" and find rescission of the insurance policy warranted. *Liebling v. Garden State Indem.*, 767 A.2d 515, 517 (N.J. Super. App. Div. 2001).

The Court finds, therefore, that Underwriters adequately demonstrate equitable fraud.[5] *See In re Tri-State Armored Servs. Inc.*, 332 B.R. at 708 ("Under New Jersey law, an insurer may seek to rescind an insurance contract on equitable fraud grounds.")

### iv.     Damages

Though the Court must accept factual allegations as true, typically damages must still be established. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (quoting 10 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure*, § 2688 at 444 (2d ed. 1983)). But because Underwriters seek declaratory relief, however, the Court need not determine whether damages were adequately pled.

### B.   Should the Court Exercise Jurisdiction in Its Discretion?

Having established the *authority* to decide the matter, the Court next turns to whether it *should* exercise jurisdiction. As other courts have noted in similar matters, "[t]he Court's discretion to exercise jurisdiction is somewhat complicated in an insurance context." *Colony Ins. Co. v. Troensa Constr., Inc.*, No. 17-03577, 2018 WL 4676038, at *6 (D.N.J. Sept. 28, 2018). The Court must consider whether there are "parallel state [court] proceedings" and weigh the *Reifer* factors to determine whether it should exercise discretion over this matter. *Id.* (citing *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 143 (3d Cir. 2014)). A parallel state court proceeding creates a

---

[5] Because the Court finds equitable fraud, which would render the Policy void *ab initio*, it need not reach the issue of whether specific terms in the Policy apply to the state court suit. That is, the Court finds that, legally, the Policy never existed and contractual interpretation of the Policy provisions would be an exercise in futility. *See* § 65:50. *Effect of policy being void ab initio*, 4 Couch on Ins. § 65:50 ("'Ab initio' means the contract is considered null from the beginning and treated as if it does not exist for any purpose." (citing 17A Am. Jur. 2d Contracts § 584)).

"presumption against exercising discretion." *Id.* Although the existence of a parallel state proceeding is "but one factor for courts to consider," it is "a significant factor that is treated with 'increased emphasis.'" *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 282 (3d Cir. 2017) (quoting *Reifer*, 751 F.3d at 144).

The U.S. Court of Appeals for the Third Circuit has held that an insurance company's liability on a contract and the extent of coverage owed by the insurer to the insured were distinct matters. *Colony Ins. Co.*, 2018 WL 4676038, at *7 (collecting cases). The inquiry is whether the state and federal suits are "substantially similar" in parties and claims. *Kelly*, 868 F.3d at 285. The Court has little trouble in determining that the state court action involving the infant's family and Nursing Agency on the one hand and this federal suit on the other are not parallel. For one, the parties are not the same. Underwriters were dismissed from the state court action over a year ago. Moreover, the state court suit involves New Jersey tort claims spawning from the infant's death whereas, here, Underwriters seek declaratory judgment to rescind an insurance contract on the grounds of fraud. (Compl. ¶¶ 3-4.) In any event, this is not a circumstance where "resolution of an issue in one [suit] will necessarily settle the matter in the other" and "[t]he issue of coverage is not necessary to the resolution of the state action." *Kelly*, 868 F.3d at 284 n.8, 287; *see also Colony Ins. Co.*, 2018 WL 4676038, at *7 ("Germane to the case before this Court, the *Kelly* decision creates a *per se* presumption that an insurer's declaratory judgment action is distinct from underlying tort actions in state court where the insurer is a non-party." (citing *Kelly*, 868 F.3d at 287)).

Consideration of the other *Reifer* factors equally support addressing Underwriters' motion.[6] First, with respect to deciding legal uncertainties, a federal declaration would resolve Underwriters' potential liability or lack thereof in the state court action, providing certainty to their obligations concerning the infant's death. Second, in considering convenience of the parties, Nursing Agency operates out of New Jersey and the state court suit is situated here as well, closing the door on an argument that this federal matter is inconvenient. Third, regarding public policy interest, "[t]he record does not indicate any public interest considerations" and interpreting the Policy "does not appear to turn on any unsettled question of state law or important policy issue implicated by the coverage claims," causing "little reason for a federal court to be reluctant about deciding this case." *Colony Ins. Co.*, 2018 WL 4676038, at *8 (citing *Reifer*, 751 F.3d at 147). Fourth, in examining the possibility of other remedies for Underwriters, the Court finds that because they are not a party to the state action, there is currently no alternative channel for adjudicating their rights as to the Policy. The remaining *Reifer* factors largely implicate concerns already addressed by the Court, such as concerns of duplicative litigation, prevention of procedural

---

[6] The *Reifer* factors include consideration of the following:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; (4) the availability and relative convenience of other remedies; (5) a general policy of restraint when the same issues are pending in a state court; (6) avoidance of duplicative litigation; (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Reifer*, 751 F.3d at 146 (citing, among other cases, *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)).

fencing in multiple jurisdictions, and the inherent conflict of interest if the insurer is defending the suit in state court and at the same time attempting to argue it should not be required to in federal court. *Reifer*, 751 F.3d at 146. To recap, because Underwriters are no longer parties to the state court suit and to date are not defending Nursing Agency in that litigation, these factors are irrelevant.

Thus, the Court finds the state court action is not a parallel proceeding, creating a presumption in favor of exercising jurisdiction. *Colony Ins. Co.*, 2018 WL 4676038, at *9. Moreover, the *Reifer* factors equally weigh in favor of exercising jurisdiction.

### C.  Is Default Judgment Warranted?

Moving forward, the last question before the Court—having found both jurisdiction and it appropriate to decide the matter—is whether default judgment should be entered. To decide this, the Court considers the following factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164 (citing *$55,518.05 in U.S. Currency*, 728 F.2d at 195). "Before imposing the extreme sanction of default, district courts must" make an explicit finding as to each of these factors. *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

"As to the first factor, '[w]hen a defendant fails to respond to a plaintiff's claims, the plaintiff will be prejudiced absent a default judgment because [the] plaintiff will be left with no other means to vindicate [its] claims.'" *Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, No. 15-5343, 2017 WL 11491955, at *3 (D.N.J. Nov. 28, 2017) (quoting *United States v. DiPiazza*, No. 16-518, 2016 WL 7015625, at *2 (D.N.J. Nov. 30, 2016)). Nursing Agency failed to respond or appear in this action for over a year. Thus, the Court finds that Nursing Agency's lack of participation in this

suit has impaired Underwriters' ability to vindicate their claims and weighs in favor of granting default judgment.

Addressing the second factor, a potential defense is meritorious "when the allegations of the pleadings, if established at trial, would . . . constitute a complete defense." *Tryg Ins.*, 2017 WL 11491955, at *3 (quoting *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 869-70 (3d Cir. 1984)). When a defendant fails to appear, a court may find it has "failed to raise any defenses for the Court's consideration." *Id.*; *see also United States v. Vo*, No. 15-6327, 2016 WL 475313, at *3 (D.N.J. Feb. 8, 2016) (noting that "the Court cannot consider [d]efendant's defenses if any exist because [d]efendant failed to respond to this action"); *Prudential Ins. Co. of Am. v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) ("[B]ecause [defendant] has not answered or otherwise appeared in this action, the Court was unable to ascertain whether [defendant] has any litigable defenses."). Here, Nursing Agency failed to raise any defense before the Court and, in any event, the pleadings do not otherwise suggest a likely meritorious defense exists. As a result, the Court finds this factor weighs in favor of granting default judgment.

Third, the Court considers "whether [D]efendant's delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164. "[C]ulpable conduct means actions taken willfully or in bad faith." *DiPiazza*, 2016 WL 7015625, at *2 (quoting *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123-24 (3d Cir. 1983)). A failure to respond, "at the very least," "reflects willful conduct." *Id.*; *see also Tryg Ins.*, 2017 WL 11491955, at *3 (holding that "[w]hile [d]efendant's complete inaction may not necessarily reflect bad faith, at the very least it reflects willful conduct." (internal quotation omitted)). Here, Underwriters properly served Nursing Agency nearly a year ago and Nursing Agency failed to respond. The Court therefore finds that this failure is willful and weighs this factor in favor of granting default judgment.

In sum, the Court finds entering default judgment appropriate. What is left is the proper remedy. Underwriters seek under the Declaratory Judgment Act a declaration that the Policy is "rescinded and void *ab initio* or, alternatively, that [Nursing Agency] is not entitled to coverage under the Policy for its defense and indemnity in the [state court] [a]ction." (Underwriters' Moving Br. 2.) The Court finds Underwriters established that Nursing Agency engaged in equitable fraud in its application, rendering the Policy void *ab initio*.

## IV.   **CONCLUSION**

The Court finds that it has jurisdiction to enter default judgment against Nursing Agency. Further, the Court finds that Underwriters plead a cause of action that warrants the Court to issue a declaration finding the Policy void. The Court will issue an order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE